UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

GELIMAN, S.A.,

       Plaintiff,

  -v-                                  No.  05 Civ. 7102 (LTS)(THK)

DESIGN IDEAS, LIMITED,

       Defendant.

--------------------------------------------------------x

## MEMORANDUM ORDER ADOPTING
## REPORT AND RECOMMENDATION

On February 11, 2008, Magistrate Judge Theodore H. Katz issued a Report and Recommendation ("Report") recommending that this action be dismissed with prejudice for lack of subject matter jurisdiction, and that the request by Defendant Design Ideas, Limited ("DI" or "Defendant") to vacate pursuant to the Court's inherent sanction authority a settlement agreement previously concluded by the parties be denied.  Timely objections to the Report were received from Defendant, Plaintiff Geliman, S.A. ("Geliman" or "Plaintiff") filed a response to Defendant's objections without making any objections of its own, and Defendant timely filed a reply.  The Court has reviewed thoroughly all of these submissions.

When reviewing a Report and Recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C.A. § 636(b)(1)(C) (West Supp. 2006).  The court must make a de novo determination to the extent that a party makes specific objections to a magistrate's findings.  United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997).  To the extent, however, that the party makes only

conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error.  See <u>Pearson-Fraser v. Bell Atl.</u>, No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); <u>Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan</u>, 806 F. Supp. 380, 382 (W.D.N.Y. 1992); <u>Vargas v. Keane</u>, No. 93 Civ. 7852 (MBM), 1994 WL 693885 at *1 (S.D.N.Y. Dec. 12, 1994).  Objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate judge's proposal.  <u>Camardo</u>, 806 F. Supp. at 381-82.

The Court has considered thoroughly Defendant's objections.  Familiarity with the contents of the Report is presumed.  For the following reasons, the Court adopts the Report's recommendations other than the recommendation that the dismissal be with prejudice, grants Defendant's motion to dismiss the action for lack of subject-matter jurisdiction, and denies Defendant's request for sanctions.

Defendant's objections assert that the Report erred as follows: 1) the Report failed to decide whether Defendant was entitled to attorneys' fees and costs pursuant to the Court's inherent sanction authority, Section 1117(a) of the Lanham Act, and/or 28 U.S.C. § 1919; 2) the Report erroneously concluded that the Court had no authority to vacate a private settlement agreement where no subject matter jurisdiction exists over the action; and 3) to the extent that the Report's recommendation that no subject matter jurisdiction exists might be interpreted as a conclusion that the Assignment Agreement was a valid conveyance of rights from Geliman to Dynamic Window, such an interpretation is incorrect.

Attorneys' fees and costs

Defendant argues that the Report failed to address whether Defendant should be awarded attorneys' fees and costs pursuant to the Court's inherent sanction authority, Section 1117(a) of the Lanham Act, and/or 28 U.S.C. § 1919.  Defendant's arguments for an award of fees and costs are premised largely on the same arguments rejected by the Report in reaching its recommendation that the Court deny Defendant's request for vacatur of the settlement, but are also premised on specific challenges to some of the findings and conclusions made by the Report in aid of its recommendation that Defendant's request for vacatur be denied.

Defendant disputes principally the Report's finding that Geliman's failure to disclose the Assignment Agreement was not evidence of Geliman's bad faith intent to delay or prolong the litigation.  However, Defendant does not dispute that an oral settlement agreement was reached mere days after the first amended complaint was filed and that, as the Report found, by the time the Assignment Agreement was executed, the parties had already agreed to most of the settlement terms.  Geliman proffered a declaration by one of its principals that the settlement agreement referred to "Geliman" as including several persons and entities, including Dynamic Window, the entity to which ownership rights were assigned.  The principal averred that, because the settlement terms included Dynamic Window anyway and most of the settlement terms had already been reached, he did not believe that the post-settlement assignment of ownership was relevant to this litigation and therefore he believed there was no need for Geliman to inform its counsel about the Assignment Agreement.  Defendant proffers nothing, beyond generalized speculations, to counter Geliman's declaration or to show that Geliman in fact acted in bad faith. See Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986) ("we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are . . .

for reasons of harassment . . . and a high degree of specificity in the factual findings of the lower courts.") (quotations and citations omitted). Moreover, Defendant's citations to <u>Schreiber Foods, Inc. v. Beatrice Cheese Inc.</u>, 402 F.3d 1198, 1206 (Fed. Cir. 2005), and similar cases involving the undisclosed assignment of rights pending ongoing litigation are unavailing, since no such settlement agreement was reached in those cases before or around the time of assignment, and the continued prosecution of those cases clearly did not involve the party to whom the rights at issue were assigned. Therefore, the undersigned concurs in Judge Katz's conclusions that Geliman's failure to disclose the Assignment Agreement was not the product of bad faith and thus, no sanctions, either in the form of vacatur of the settlement agreement or in the form of attorney's fees and costs, are warranted on that basis.

Defendant also disputes the Report's finding that Geliman's failure to disclose the Assignment Agreement "did not hamper this Court's ability to adjudicate the matters in issue" (Report at 29), arguing that Geliman's delay in disclosing the Assignment Agreement resulted in nearly two years of wasted judicial resources. However, the Report made that finding in the course of rejecting the argument that Geliman committed fraud on the court. See <u>King v. First American Investigations, Inc.</u>, 287 F.3d 91, 95 (2d Cir. 2002) ("Fraud on the court should embrace only the species of fraud which does or attempts to, defile the court itself . . . .") (internal citations and quotation marks omitted). Because the Court finds, for the reasons explained throughout this Order, that Geliman did not act in bad faith when it failed to disclose the Assignment Agreement soon after it was signed, no fraud against the court has been demonstrated. As such, the judicial resources expended post-assignment were not "wasted" in the sense that they were the result of fraud, and the mere fact that such judicial resources were expended is insufficient grounds for sanctions relief in the form of fees and costs.

The Court also rejects Defendant's challenges to the Report's findings that Geliman's failure to file this action under the correct party's name and its failure to correct the complaint's misstatement that Geliman owned the trademarks were not committed in bad faith. Having reviewed the record de novo, the Court concurs with the Report's reasoning that Geliman had nothing to gain by failing to reveal that its principals, rather than the company itself, owned the trademarks. Accordingly, no sanctions in any form are warranted based on the misstatement of the correct party in the complaint.

Defendant argues that the Report's finding that Geliman's filing for bankruptcy was not done in bad faith misapprehends the nature of Defendant's argument, which is that Geliman's failure to disclose the bankruptcy filing, along with alleged misrepresentations to the bankruptcy trustee, was part of a fraudulent scheme designed to, inter alia, continue obtaining royalty payments from Defendant and transfer assets to Dynamic Window out of the reach of Geliman's creditors. Defendant, however, points to nothing in the oral settlement agreement that would suggest that Defendant's obligations to make royalty payments would cease upon a declaration of bankruptcy, nor does Defendant point to anything in Argentinian law that would suggest that a declaration of bankruptcy would result in the cancellation of Defendant's obligation to pay royalties. Nor is there any evidence that such legal consequences, even if possible, were so obvious to Geliman that its failure to disclose the bankruptcy proceedings immediately is probative of bad faith.

Defendant complains that, while Geliman's principals told the bankruptcy trustee in a letter dated August 8, 2007, that "Geliman had asserted no claims on its own behalf in this litigation" (Br. at 9), Geliman twice represented to the Court that "it had in fact asserted claims on its own behalf." (Id.) However, the representations in this action upon which Defendant relies relate specifically to standing (i.e., "Geliman has standing to assert 43(a) claims for infringement

and unfair competition," "Geliman S.A. had standing to bring some of the claims asserted in this lawsuit").  The representation to the bankruptcy trustee that Geliman was not bringing claims on its own behalf and the representations to the Court that Geliman had standing to bring this action are not contradictory and are actually consistent with the averment by one of Geliman's principals that he believed at the time the litigation was commenced that Geliman could bring trademark infringement claims in a representative capacity on behalf of its principals.  (See Report at 25 (citing declaration).)  Therefore, no bad faith may properly be inferred from these sets of representations.  Lastly, Defendant's proffer that Geliman's motive was to convince the trustee that the settlement proceeds were not part of Geliman's estate is based wholly on speculation.  For these reasons, the Court adopts the Report's finding that Geliman's actions in connection with the bankruptcy proceeding were not done in bad faith.

        The Court has reviewed the portions of the Report to which Defendant lodges no specific objection and finds no clear error.  For all the foregoing reasons, the Court declines to exercise its inherent sanction authority to award attorneys' fees and costs or to vacate the settlement agreement.

        Defendant next argues that the Report failed to consider whether sanctions were warranted under Section 1117(a) of the Lanham Act.  However, as the cases cited by Defendant themselves demonstrate, a party is entitled to fees and costs pursuant to 15 U.S.C. § 1117(a) only "[w]hen a violation of any right of the registrant of a mark . . . shall have been established in any civil action . . . ." 15 U.S.C.A. § 1117(a) (West Supp. 2008).  No such violation has been established in this case; therefore no relief pursuant to Section 1117(a) is warranted.  Moreover, the admission by Geliman's counsel that he should have exerted more effort to ascertain the ownership issue is not tantamount to an admission that no effort to investigate the facts of the complaint was

made at all, and thus does not warrant an award of fees and costs.  See Viola Sportswear, Inc. v. Mimun, 574 F. Supp. 619, 620 (E.D.N.Y. 1983) ("No effort was made by the plaintiff to make any investigation of the facts prior to filing the complaint").  Therefore, even if an award of fees and costs were authorized under Section 1117(a) absent a finding that a violation occurred, which it is not, Defendant proffers no evidence of bad faith or utterly undue diligence that would warrant an award of fees and costs, nor is any award warranted based on any argument premised on alleged bad faith, for the reasons already discussed.

       Lastly, Defendant argues that an award of fees and costs is appropriate pursuant to 28 U.S.C. § 1919, which provides, in pertinent part that, "[w]henever any action or suit is dismissed in any district court, . . . such court may order the payment of just costs."  28 U.S.C.A. § 1919 (West 2006).  See Correspondent Servs. Corp. v. JVW Inv., Ltd., No. 99 Civ. 8934 (RWS), 2004 WL 2181087, *15 (S.D.N.Y. Sept. 29, 2004) ("just costs" may include attorneys' fees in some cases).  Defendant, however, proffers no argument specifically explaining why it believes it is entitled to fees and costs pursuant to this statute, nor does the Court conclude that any award of fees and costs is warranted pursuant to this statute, since, as discussed thoroughly above and in the Report, there has been no showing of bad faith on the part of Geliman or its counsel.

Vacatur of the Settlement Agreement

       Defendant argues that the Report's refusal to recommend vacatur of the settlement agreement was erroneously premised on a finding that Geliman's alleged fraud "did not come to light" until after the settlement agreement, as well as doubts about whether a court has the authority to vacate a private settlement agreement after finding that there was no subject-matter jurisdiction existed of the underlying action.  The Court, however, does not read the Report's mere mention

that certain developments "came to light after the initial settlement was reached" (Report at 23) to be the basis on which it recommended denial of Defendant's vacatur request; in any case, as the Court has already explained thoroughly, there is no finding of bad faith and therefore, sanctions in any form and under the authorities cited by Defendant are unwarranted.  Therefore, the Court adopts the Report's recommendation that Defendant's request for vacatur of the settlement agreement be denied.

Whether the Assignment Agreement is Valid

Neither party disputes the Report's findings that Geliman executed the Assignment Agreement with Dynamic Window, which assigned the trademark rights to Dynamic Window as well as Geliman's rights under the settlement agreement with Defendant, that the settlement agreement between the parties released both Geliman and Defendant from all claims that were or could have been asserted prior to the settlement agreement, that Geliman no longer had standing to assert claims under either the Lanham Act or the settlement agreement, and that there was therefore no case or controversy between Geliman and Defendant, requiring dismissal of the instant action for lack of subject-matter jurisdiction.  The Court finds no clear error in that recommendation and adopts it accordingly.

Defendant, however, seeking to prevent Geliman from using dismissal of this action as a shield against any action accusing Geliman of fraudulently conveying assets to Dynamic Window prior to bankruptcy, argues in a footnote (Br. at 4-5 n.3) that the Report's recommendation (if adopted) should not be interpreted as a finding that the Assignment Agreement was a valid conveyance of rights from Geliman to Dynamic Window.  Geliman, on the other hand, argues that the Report's recommendation implicitly finds that the Assignment Agreement was

valid.

The issue of whether the conveyance can successfully be attacked as fraudulent has not been presented or considered here, not does this Court's dismissal of the action for lack of subject-matter jurisdiction make any determination as to the future preclusive impact, if any, of this decision on future litigation concerning the merits of the parties' dispute.

## CONCLUSION

For the foregoing reasons, in addition to the reasons articulated in Judge Katz's thorough and well-reasoned Report, the Court grants Defendant's motion to dismiss the action for lack of subject-matter jurisdiction and denies Defendant's request for sanctions. The dismissal of this action is without prejudice. The Clerk of Court is respectfully requested to terminate Docket Entry No. 32, enter judgment accordingly, and close this case.

SO ORDERED.

Dated:   New York, New York
         February 11, 2009

LAURA TAYLOR SWAIN
United States District Judge